```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENT C. FINIZIA,                                           :
                         Plaintiff,                           :
v.                                                            :
                                                              :     OPINION AND ORDER
CRAWFORD & COMPANY; and KIMBERLY                              :
BETHEA, in her corporate capacity as VP of                    :     21 CV 5831 (VB)
Crawford's Northeastern Region and her                        :
individual capacity,                                          :
                         Defendants.                          :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Vincent C. Finizia, brings this action against defendants Crawford & Company ("Crawford") and Kimberley Bethea, alleging defendants discriminated against him because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the New York State Human Rights Law ("NYSHRL").

Now pending is defendants' motion for summary judgment.  (Doc #39).

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1367.

## BACKGROUND

The parties have submitted memoranda of law; affirmations, declarations, and affidavits with exhibits; and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

I.    Plaintiff's Employment and Termination

Plaintiff began employment with Crawford, a company specializing in loss adjusting and third-party administration of insurance claims, on February 5, 2018.  At the time, he was 67 years old.

1

Plaintiff worked as a property claims adjuster and was assigned to handle claims in Crawford's "Central New York" territory. Plaintiff worked exclusively on property adjustment claims because he did not have the experience or training to conduct liability and casualty adjusting work.

Central New York is part of Crawford's "Northeast Region," which covers New York and northern New Jersey. Central New York accounts for approximately eight-to-ten percent of the volume of claims Crawford receives in the Northeast Region. Plaintiff shared this territory with another property claims adjuster, Carmine Valvano, who was 62 years old and had worked for Crawford for approximately thirty-seven years at the time of plaintiff's hire.

Plaintiff was supervised by Richard Barbolt, who was approximately 64 years old at the time of plaintiff's hire. Beginning in September 2019, defendant Bethea, Managing Director for the Northeast Region, supervised Barbolt. Bethea was 54 years old when Crawford hired her in September 2019.

In December 2018, approximately ten months after plaintiff was hired, Crawford considered terminating his employment as part of a reduction in force ("RIF"). (See Doc. #42-4 ("2018 RIF Request") at ECF 1; see also Doc. #42 ("Bethea Decl.") ¶ 14).[1] Crawford considered terminating plaintiff because a "model for New York property claims shows that the unit is over staffed by one employee" and plaintiff had "the lowest production in the territory." (2018 RIF Request at ECF 1; Bethea Decl. ¶ 14). Bethea's predecessor, Lou Kazman (48 years old), prepared a "RIF Packet Request" on December 19, 2018, which stated:

> [Plaintiff] is one of five new hires in 2018 and those hired later than him have higher production. Vincent started with Crawford in February and his monthly revenue

---

[1] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

> averages $7,300.  John Schaefer Jr. started in January and averages $11,700.  Steven Tomasian started in August and averages $16,000.  Jacqueline Neville started in September and averages $9,100.  Frederick Bell started in October and averages $17,000.
>
> Carmino Valvano, Carla Burroughs and Jacqueline Neville will be able to absorb the claim assignments that Vincent normally receives.

(2018 RIF Request at ECF 1).  The 2018 RIF Request indicated eight of the nine property adjusters assigned to the Northeast Region were above forty years of age.  (See 2018 RIF Request at ECF 1–2 (listing ages of the nine property adjusters (in age order) as 39, 43, 46, 47, 47, 55, 60, 62, 68)).

Crawford ultimately did not terminate plaintiff's employment at that time.  Instead, on January 9, 2019, Kellie Parham, a Human Resources employee at Crawford, sent plaintiff an email stating: "As discussed, Crawford . . . is realigning its organizational structure.  Your position as a [salaried] Property Adjuster is being eliminated and you are being offered the role of a 35% commissioned adjuster instead."  (Doc. #42-5 ("Commission Email") at ECF 2) (brackets in original).  Accepting the new role would entail a salary reduction from $65,000 to $48,750.  (Id. at ECF 2; Doc. #41-1 ("Finiza Dep. Tr.") at 56).[2]  Plaintiff was given seven days to decide whether to accept the commissioned role or to opt for a "severance package." (Commission Email at ECF 3).  Plaintiff accepted a role as the commissioned property claims adjuster on January 14, 2019.

On February 27, 2019, plaintiff's first performance evaluation was conducted.  The review period covered the start of plaintiff's employment in February 2018 through December 31, 2018, and evaluated plaintiff's performance on several different measures, such as job knowledge, quality of work, quantity of work, driving exceptional customer service, planning

---

[2]   Citations to "Tr. at _" refer to the page number at the top right-hand corner of each transcript page.

3

and organizing, judgment and problem solving, communicating, and modeling accountability and speed. (Doc. #42-3 ( "2018 Performance Review") at ECF 3–4). Although plaintiff's "Total Self Rating" on these factors was a 3.87 out of 5, his "Total Manager Rating"—i.e., the rating given by Barbolt, plaintiff's supervisor—was a 2.87 out of 5. (Id. at ECF 4). The review stated plaintiff's "strength lies in his great customer service instincts . . . [and] depth of knowledge in the remediation field." (Id. at ECF 5). However, it also stated plaintiff's productivity was ranked the lowest of all property adjusters, his "understanding of the claims process does not always translate into his written work product which is often lacking the necessary detail required to document his position," and he "continues to struggle with generating an efficiency that would allow him to be productive." (Id.)

On January 7, 2020, plaintiff's second performance review was conducted, which covered the period from January 1 through December 31, 2019. In this review, Barbolt noted plaintiff's "PSR Full File Audit score of 95% is evidence of a quality work product," but that certain of his performance metrics "would . . . benefit from an improvement" because they were "slowing down the entire process." (Doc. #42-6 ("2019 Performance Review") at ECF 2). Barbolt also noted plaintiff "generated $84,802 in revenue achieving a 45% if [sic] his budget objective" but had been "handicapped in this regard with a lack of volume in his service area and his territory has since been expanded to include parts of the NY Metro area to compensate going forward." (Id. at ECF 3).[3] He received a Manager Rating of having "Partially Achieved Expected Results" with respect to his goals, as having "Fully Achieved Expected Results" on his

---

[3] Plaintiff contends he was assigned claims outside of his region and in other areas of the New York City Metropolitan region from the beginning of his employment. (Doc. #50 ("Pl. Aff.") ¶ 3). Defendants dispute this, claiming plaintiff was only assigned claims outside of his territory after the 2019 Performance Review.

4

competencies, and as having "Fully Achieved Expected Results" on his goals and competencies combined.  (Id. at ECF 4, 6).

In the comments section of the review form, Barbolt again emphasized plaintiff's customer service strengths, and noted plaintiff had "demonstrated his willingness and ability to learn this craft and blend it with his former experience."  (2019 Performance Review at ECF 7). But Barbolt also noted plaintiff's "customer service instincts are derived from experience outside claims handling and sometimes interfere with the development of the work product on behalf of our client."  (Id.)  Barbolt further stated "[w]ith only 5 years of actual claims handling experience there is considerable room for improvement in the quality of his reporting, which tends to be scarce on detail, and his generation of an independent Estimate based on his own evaluation of a damage scenario."  (Id.)

Plaintiff contends he never turned down claims assignments, had no say as to the geographic areas to which he was assigned, and "there were many times when [he] asked [his] superiors to assign [him] more claims."  (Pl. Aff. ¶¶ 4–6).

On April 14, 2020, shortly after the COVID-19 pandemic began in the United States, Robert Simpson, Crawford's Senior Vice President of National Claim Operations, sent an email to "USP&C Managing Directors"—which included defendant Bethea—asking each Managing Director to review the "list of producers who operated below the 2.6 minimum for Q1" of 2020[4] and "provide a minimum of 3 to 5 names in your operation whom you would consider for a 60 day furlough should that action be required."  (Doc. #42-7 ("RIF Email Correspondence") at ECF 3).

---

[4]    A rate of "2.6 minimum means that the adjuster produces at least 2.6 times his or her yearly salary."  (Bethea Decl. ¶ 23).

5

Bethea responded to Simpson's email on April 15, saying "we plan to RIF Vincent Finizia as he is in an area that is sufficiently staffed," based on "a territory analysis looking at last year's data by county in addition to recent trends" and "the productivity information provided at . . . year-end 2019." (RIF Email Correspondence at ECF 1). Bethea also informed Simpson "although Vincent is certified to handle USAA claims," the total volume of those claims could be handled by other certified adjusters from nearby adjacent territories. (Id. at ECF 1–2).

Later the same day, Bethea sent an email to a different Crawford employee, stating:

> As mentioned Vinny, along with another claim professional, namely Carmine Valvano, are assigned to handle the Central NY area. In reviewing our claim volume for 2019, the total claim count in this area accounts for 10% of our total claim volume, with that the volume that this area generates is not sufficient to sustain 2 claim professionals.

(RIF Email Correspondence at ECF 1). Bethea also noted plaintiff's productivity during the first quarter of 2020 had "deteriorated even more so from 1.84 to 1.38" and was "certainly well below the 2.6% target" set by Simpson for potential furlough candidates. (Id.).

On April 16, 2020, Bethea prepared a RIF Packet Request concerning plaintiff's termination. (Doc. #42-8 ("2020 RIF Request")). The 2020 RIF Request states "[i]n the wake of the global Covid-19 pandemic, the Northeast Region has experienced a significant decrease in revenue as a result of a sudden decline in claims volume." (Id. at ECF 1). The 2020 RIF Request continues:

> Currently, both Vincent Finizia and Carmine Valvano support the Central NY area. In reviewing the Northeast Region's claim volume for 2019, the total claim count in this area accounts for 10% of the region's total clam volume. As a result of this analysis coupled with the current decline in claim volume, there is not enough work to sustain (2) full time adjusters in this territory. Given Vinny's production continues to trend downward within the bottom quartile of performers among the team, he was selected to be reduced.

(Id.).

6

Plaintiff was 69 years old at the time of his termination. He contends he was not informed of the reasons for his termination. Crawford did not fill plaintiff's position or hire another adjuster to work on property claims in plaintiff's territory.

Crawford also furloughed two claims adjusters assigned to the Northeast Region at the time of plaintiff's termination: Carla Burroughs, a 61 year old property and casualty claims adjuster assigned to the upstate New York territory, and Denis Lanberg, a 68 year old casualty claims adjuster assigned to the Hudson Valley Central territory. Burroughs resumed her full-time employment with Crawford after a four-month furlough period. Lanberg's employment was terminated in August 2020.

Another Crawford claims adjuster assigned to the Northeast Region, Joseph Costanzo, who was the same age as plaintiff (69 years old), was not terminated or furloughed.

II.     Kelly Beckford's Employment

In January 2020, Crawford hired Kelly Beckford (then 39 years old) as a property and casualty claims adjuster assigned to the Metro New York and Long Island territories. Beckford was not certified to handle USAA claims, as plaintiff was. However, at the time Crawford hired Beckford, it already employed adjusters with this certification in Beckford's territory. (See Pl. 56.1 Statement ¶¶ 41–43; see also Doc. #41-2 ("Bethea Dep. Tr.") at 53–54).

## DISCUSSION

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[5]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v.

---

[5]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Age Discrimination Claims

Defendants argue they are entitled to summary judgment because there is no genuine issue of material fact that defendants' proffered legitimate, nondiscriminatory reasons for terminating plaintiff's employment were pretextual and no reasonable jury could conclude, based on the evidence presented, that age was the "but-for" cause of defendants' decision to terminate his employment.

The Court agrees.

A.     Legal Standard

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  This protection extends to employees who are at least forty years old.  Id. § 631(a).

The NYSHRL similarly provides that an employer may not "refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" because of, among other characteristics, an individual's age.  N.Y. Exec. Law. § 296(1)(a).

9

"Age discrimination claims under the ADEA and NYSHRL are evaluated under the McDonnell Douglas burden-shifting framework." Rinaldi v. Mills, 2022 WL 17480081, at *1 (2d Cir. Dec. 7, 2022) (summary order); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, a plaintiff must establish a prima facie case of age discrimination by demonstrating: "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010). "This burden is not a heavy one." Id.

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011). If the employer meets this burden, the burden shifts back to the plaintiff to show that a reasonable jury could find, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." Gorzynski v. JetBlue Airways Corp., 596 F.3d at 106.

"The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's only consideration, but rather that the adverse employment action would not have occurred without it." Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014). "In this respect it is important to consider whether the explanations that [the employer] gave for [the plaintiff's] firing were pretextual." Gorzynski v. JetBlue Airways Corp., 596 F.3d at 107.

10

B.     Application

Here, even if the Court assumes plaintiff met his prima facie burden and views the totality of the evidence in the light most favorable to plaintiff, defendants have articulated legitimate nondiscriminatory reasons for plaintiff's employment termination and plaintiff has failed to raise a triable issue that these reasons were pretext for age discrimination.

Defendants submit voluminous evidence indicating plaintiff's employment was terminated because Crawford experienced reduced claims volume in plaintiff's region at the start of the COVID-19 pandemic and plaintiff's productivity levels were low when compared with those of other claims adjusters in the region. See Delaney v. Bank of Am. Corp., 766 F.3d at 168 (employer met its burden to articulate a legitimate, nondiscriminatory reason to terminate plaintiff's employment when the plaintiff "was terminated as part of a company-wide RIF to eliminate positions that generated insufficient value and that could be eliminated with little impact to the company's functioning" and plaintiff "received a negative mid-year performance review that raised concerns about his productivity level").

Specifically, the record shows plaintiff struggled to meet defendants' productivity expectations from the start of his employment in February 2018. Because plaintiff had the lowest productivity among Crawford's property claim adjusters in the Northeast Region during his first ten months of employment, Crawford considered terminating plaintiff's employment as early as December 2018. Although Crawford did not terminate plaintiff at that time, the record supports that Bethea decided to terminate plaintiff's employment in April 2020 after the COVID-19 pandemic began because plaintiff's productivity continued to lag behind expectations, and his territory generated too low a claim volume to support retaining both plaintiff and Valvano, the other property claims adjuster assigned to plaintiff's territory. Valvano—who was not fired—

11

was 64 years old when plaintiff was terminated and had worked at Crawford for thirty-nine years (as compared with plaintiff's two years).  After terminating plaintiff, Crawford did not fill his position or hire another employee in his territory.  And because Beckford was assigned a different territory and performed a different job function than plaintiff, plaintiff has not identified a similarly situated younger employee whom Crawford treated differently.

Indeed, except for the fact that plaintiff was 69 years old when he was terminated, there is virtually no evidence, direct or circumstantial, to support plaintiff's claim that defendants' proffered reasons for letting him go are pretext for age discrimination.  See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 394 (S.D.N.Y. 2012) (that plaintiff was 56 years old and female "standing alone, particularly in the context of a group-termination RIF, cannot support her discrimination claims" when the work available to the plaintiff reduced and plaintiff's work responsibilities could be absorbed by her supervisor).

Plaintiff points to individual statements in his 2019 Performance Review that he produced a "quality work product" and that, in most respects, he fully achieved expected results.  (2019 Performance Review at ECF 2).  However, the 2019 Performance Review also stated plaintiff was achieving only forty-five percent of his budget objective, his performance on some metrics would "benefit from an improvement," and he was only partially achieving expected results with respect to his goals.  (Id. at ECF 2, 4).  Therefore, the positive feedback in the 2019 Performance Review, when considered in context with the rest of that review, the 2018 Performance Review, and plaintiff's performance during the first quarter of 2020, does not give rise to an inference that defendants' asserted concerns with plaintiff's productivity were pretext for age discrimination.

Plaintiff also contends he often asked his superiors to assign him more claims, and thus, the asserted concerns with plaintiff's productivity are pretext for age discrimination. However, the record supports that Crawford expanded plaintiff's assigned territory to include parts of the New York metropolitan area after the 2019 Performance Review, and plaintiff's productivity nevertheless remained low during the first quarter of 2020. Moreover, that plaintiff may have exhibited a willingness to perform better does not demonstrate defendants' stated reasons for letting him go were pretextual. See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d at 396 ("the essence of a RIF is that competent employees who in more prosperous times would continue and flourish with a company may nevertheless have to be fired").

Finally, the Court disagrees with plaintiff that his age, when considered with the ages of the two Crawford employees furloughed at the time of his termination—Burroughs (61) and Lanberg (68)—raises an inference of age discrimination. The record reflects Crawford's property claims adjusters in the Northeast Region were generally older. Indeed, seven of the fifteen remaining property and casualty adjusting employees after plaintiff's termination were in their fifties and sixties, and only one such employee was under forty. (See Doc. #51-1). Moreover, Bethea (54), who determined to terminate plaintiff, and Barbolt (68), plaintiff's direct supervisor, were in the same protected age group as plaintiff, weakening the argument that plaintiff's age motivated the decision to terminate him or provide him with negative performance reviews. See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. at 395 (that the sole decision-maker with respect to the RIF in which the plaintiff was terminated was 54 years old "preclude[d] an inference of age . . . discrimination"). And, like the statements plaintiff focuses on above, these employees' ages have to be considered in context with the rest of the record indicating Crawford furloughed and terminated employees that failed to meet certain

productivity metrics to respond to a reduced claims volume at the start of the COVID-19 pandemic.

Therefore, defendants have articulated legitimate, nondiscriminatory reasons for terminating plaintiff's employment, and the facts proffered by plaintiff, when considered cumulatively with the rest of the record, do not create a triable issue as to whether age was the but-for cause of defendants' decision to terminate his employment.

Accordingly, summary judgment for defendants is warranted, and plaintiff's claims must be dismissed.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #39) and close this case.

Dated: June 23, 2023
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge